CITY OF BAY CITY v SURATH

Docket No. 99335. Submitted March 9, 1988, at Lansing. Decided May 24, 1988.

The City of Bay City brought a condemnation action in Bay Circuit Court against Bernard and Rosemarie Surath, estimating just compensation to be $858,000. Bay City subsequently revised its estimate to $604,710. At trial, Bay City presented proofs indicating that defendants were entitled to $722,595. The jury returned a verdict awarding defendants $925,430. The trial court, William J. Caprathe, J., granted defendants $67,611.66 in attorney fees for counsel, which was one-third of the difference between $722,595 and $925,430, and cocounsel's fee of $14,646.31 for a total of $82,257.67. Plaintiff appealed the award of attorney fees.

The Court of Appeals *held:*

The Uniform Condemnation Procedures Act provides that, if the amount finally determined to be just compensation for the property acquired exceeds the amount of the good faith written offer submitted by the condemning governmental agency prior to the filing of the complaint for condemnation, the circuit court shall order reimbursement by the agency in whole or in part to the owner of the owner's reasonable attorney fees in an amount not to exceed one-third of the amount by which the ultimate award exceeds the agency's written offer made prior to filing of the complaint. Thus, in this case the maximum allowable award of attorney fees is $22,474, which is one-third of the difference between the written offer of $858,000 and the jury verdict of $925,000. On remand, the trial court is to award reasonable attorney fees not exceeding $22,474, which may be divided between counsel and cocounsel according to whatever agreement exists between them.

Reversed and remanded.

REFERENCES

Am Jur 2d, Eminent Domain §§ 473 *et seq.*

Amount of attorney's compensation in matters involving real estate. 58 ALR4th 201.

Attorney's fees as within statute imposing upon condemnor liability for "expenses," "costs," and the like. 26 ALR2d 1295.

EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — ATTORNEY FEES.

In an action brought under the Uniform Condemnation Procedures Act, if the amount finally determined to be just compensation for the property acquired exceeds the amount of the good faith written offer submitted by the condemning governmental agency prior to the filing of the complaint for condemnation, the circuit court shall order reimbursement by the agency in whole or in part to the owner of the owner's reasonable attorney fees in an amount not to exceed one-third of the amount by which the ultimate award exceeds the agency's written offer made prior to filing of the complaint (MCL 213.66[3]; MSA 8.265[16][3]).

*Seward, Tally & Piggott, P.C.* (by *Peter G. Seward* and *Kenneth K. Wright*), for plaintiff.

*Leo Goldstein, P.C.* (by *Leo Goldstein* and *Mark Burstein*), for defendants.

Before: WEAVER, P.J., and SHEPHERD and F. D. BROUILLETTE,* JJ.

PER CURIAM. Plaintiff City of Bay City appeals an award of attorney fees in this condemnation action in the amount of $82,257.97. The city argues that the portion of a reasonable attorney fee that may be assessed against the city is statutorily limited to no more than $22,474. We agree.

In 1984 the city determined that it needed certain parcels of land located adjacent to the Saginaw River for the purpose of constructing a bridge. The property was owned by defendants Bernard and Rosemarie Surath, who operated a scrap iron and metal processing business on the property.

Pursuant to the provisions of the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.*, the city forwarded an offer of just compensation to defendants totalling $858,008;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

$471,536 for real estate, $386,472 for fixtures. Defendants, through counsel, rejected the offer. The city then instituted a condemnation action pursuant to the act on March 27, 1984. Attached to the complaint was a copy of the resolution and declaration of taking, including the estimated just compensation. Pursuant to a May 21, 1984, order of the trial court, the city paid defendants $858,-008 and took possession of the property.

On April 14, 1986, the city filed a Notice of Estimated Compensation Revision. The notice indicated that the appraisal had been revised and estimated that the compensation due was $604,-710. On October 21, 1986, the condemnation action proceeded to trial. At trial, the city entered proofs indicating defendants were entitled to $722,595, some $117,885 above the $604,710 figure in its pleadings, which sum was said to be for "equipment." Defendants sought to prove that just compensation was $2.6 million. The jury returned a verdict in the amount of $311,395 for the real estate and $614,035 for the personal property—a total award of $925,430.

Subsequent to trial, defendants moved for attorney fees. Defendants argued that they were entitled to a fee based on one-third of the difference between the city's pleadings at trial of $604,710 and the judgment award of $925,430. In addition defendants' cocounsel submitted an hourly bill of $14,646.31. The city argued that the offer constituting the basis for an attorney fee award was $858,008. In other words, the city argued that the verdict resulted in a $67,422 gain to defendants. The city argued that a reasonable attorney fee was one-third of that sum, or $22,474, based on the attorney fees provision in the act. The trial court granted defendants' attorney fees based on one-third of the difference between the city's proofs,

$722,595, and the final verdict, $925,430, for a total of $67,611.66. In addition, the court awarded cocounsel $14,646.31 or a total attorney fee of $82,257.87. The city appeals.

The key issue is the basis for the award of attorney fees under the UCPA. The act governs condemnation proceedings. It provides standards for the acquisition of property by an agency, the conduct of condemnation actions and the determination of just compensation. MCL 213.52; MSA 8.265(2).

If property is to be acquired by a governmental agency through the exercise of its power of eminent domain, the agency shall commence a condemnation action by filing a complaint for the acquisition of the property in the circuit court in the county in which the property is located. MCL 213.52; MSA 8.265(2) and MCL 213.55; MSA 8.265(5). Section 5 of the act, MCL 213.55; MSA 8.265(5), sets forth the procedural requirements for the initiation of condemnation proceedings. Before filing the complaint for the acquisition of the property, and before initiating negotiations for the purchase of the property, the agency must establish an amount it believes to be just compensation for the property. After an amount is established, the agency must submit to the owner a good faith written offer which shall not be less than the agency's appraisal of just compensation. If the owner rejects the agency's offer, the agency may then initiate condemnation proceedings by filing a complaint with the circuit court in the county where the property is located. Therefore, § 5 defines "offer" as that amount determined by the agency to be just compensation which is thereafter submitted to the owner for the purchase of the property. Procedurally, the written offer precedes the filing of the complaint. In this case the written

offer of $858,008 was submitted to respondents on February 29, 1984. That offer was rejected and the city brought this condemnation action pursuant to the statute.

MCL 213.66(3); MSA 8.265(16)(3) provides for reimbursement of attorney fees:

> If the amount finally determined to be just compensation for the property acquired exceeds *the amount of the written offer as defined in section 5,* the court shall order reimbursement in whole or in part to the owner by the agency of the owner's reasonable attorney's fees, but not in excess of ⅓ of the amount by which the ultimate award exceeds the *agency's written offer as defined by section 5.* The reasonableness of the owner's attorney's fees shall be determined by the court. [Emphasis added.]

In this case the written offer as defined by § 5 of the act was $858,008. In fact, that amount was paid to defendants in May of 1984 pursuant to the court order. Final judgment totalled $925,430. The award exceeded the written offer by $67,422. Under the above statute, the city's share of a reasonable attorney fee should not have exceeded one-third of that amount, or $22,474.

Defendants essentially argue that the city "revised" its offer by its Notice of Revised Estimate of Just Compensation in the amount of $604,710 or, alternatively, by its proofs at trial. We do not believe there is any relationship between the § 5 offer and the condemning authority's proofs at trial for purposes of attorney fees. Nor do we believe that such a conclusion ignores the Legislature's intent to place a property owner in as good a position as was occupied before the taking as argued by respondents. See *Escanaba & L S R Co v Keweenaw Land Ass'n,* 156 Mich App 804; 402

NW2d 505 (1986). In fact, we believe the above reading encourages fair and equitable initial offers on the part of condemning authorities because it penalizes § 5 offers that are deliberately made low. The procedural scheme outlined in the UCPA forewarns a public agency that a low offer may result not only in litigation and its concomitant expenses, but also in payment of virtually all major expenses of the property owner related to the litigation. See MCL 213.66(3)and (4); MSA 8.265(16)(3) and (4). Thus the procedures and provisions of the act encourage a fair and equitable initial offer since the act provides for potentially heavy penalties resulting from litigation.

We therefore find that under the UCPA scheme the basis for awarding attorney fees is the difference between the § 5 offer, here $858,008, and the final judgment amount, $925,430. That total is $67,422. Under MCL 213.66(3); MSA 8.265(3) the maximum possible award for reasonable attorney fees against the city is one-third of that figure, or $22,474. We remand this case for an award of attorney fees of not more than $22,474. That amount, if the trial court determines that it is reasonable, may be divided between counsel and cocounsel according to whatever agreement exists among counsel and defendants.

There is one final matter. At oral argument (but not in the briefs) it was suggested that the city's § 5 offer did not include certain "moveable fixtures," i.e., equipment. Indeed, at oral argument, the city indicated that it had mistakenly concluded before submitting its § 5 offer that that issue had been settled. At trial, its pleadings indicated that it would prove a figure of $604,710 as just compensation. This figure did not include the equipment. At trial, its proofs indicated a just compensation figure in excess of $722,000, including the equip-

ment. It was represented that defendants were surprised by these additional proofs. Defendants have not alleged any irregularity in the initial offer, the complaint, or in proofs at trial. Presumably, if defendants viewed the city's § 5 offer as defective they were free to challenge the city's complaint in its initial pleadings by way of a motion to dismiss the suit. Furthermore, defendants were free to challenge the admission of such proofs at trial.

This is not an appeal from the judgment of the trial court relating to the condemnation itself. If defendants believed that the equipment should not have been the subject matter of the case, they could have challenged its inclusion. Instead, they went ahead with the trial and have accepted the award. It may be correct that the § 5 offer did not include all of the items that were actually taken in the condemnation action. However, at some point defendants became aware of this problem and nevertheless chose to go forward with the condemnation. Even as late as mid-trial defendants could have raised this problem. They also could have challenged the taking of the equipment in an appeal. They did neither.

At this late stage where the only issue is the attorney fees we are faced with the strict provision of the statute which permits the portion of the attorney fee that must be paid by the city to be based only on the difference between the § 5 offer and the verdict. The statute does not allow for postcomplaint revisions of the § 5 offer. We are well aware that this opinion permits the comparison of unlike quantities, i.e., a § 5 offer that included two items (real estate and immovable fixtures) and a verdict that included three items (real estate, immovable fixtures and equipment). Any impropriety in this result should have been raised

in a challenge to the verdict. Had this been done, defendants might have received no attorney fee at all from the city. The condemnation might have been set aside, a new § 5 offer would have been submitted that would have included the equipment, and a trial in the second condemnation action might very well have resulted in a verdict equal to or less than the § 5 offer.[1]

We wish to emphasize that our opinion does not relate to the portion of the attorney fee that must be paid by defendants.

Reversed and remanded.

---

[1] The § 5 offer was $858,008. The "Notice of Estimated Compensation Revision" filed two years later as a pleading in the condemnation case, was $604,710. Neither figure included the equipment. The city alleged the equipment to be worth $124,685. If that amount had been added to the § 5 offer, the offer would have been $982,693. The verdict was $925,430. In another possible scenario, a new § 5 offer might have been $604,710 plus $124,685 or $729,395. We will not speculate further on what might have been because the statute confines our inquiry to what was.